UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL SCOTT LOCKWOOD<br><br>Defendant. | Case No. 23-CR-146-RDM |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Michael Scott Lockwood to 27 months' incarceration, three years' supervised release, $2,000 restitution, and a $100 special assessment. The government's recommended sentence is the midpoint of the applicable 24-to-30-month guidelines range calculated by the United States Probation Office and the parties.

I.   INTRODUCTION

The defendant, Michael Lockwood, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and

1

Lockwood was in the restricted area on the west side of the U.S. Capitol building for over two hours. While there, he took selfies and bragged about his presence on social media. When police officers attempted to remove Lockwood from the area, he physically resisted. Another rioter began striking Metropolitan Police Department ("MPD") Officer M.M. with a flagpole, and when Officer M.M. attempted to defend himself, Lockwood grabbed Officer M.M.'s police baton and wrestled it away from him. Lockwood then bragged about stealing the police baton, and three days later, he sent pictures of the stolen police baton to a friend, stating "Got me a little souvenir from Wednesday."

The government recommends that the Court sentence Lockwood to 27 months' incarceration for his conviction for violating 18 U.S.C. § 111(a). This sentence properly accounts for Lockwood's conduct and failure to express any remorse for his actions.

## II.     FACTUAL BACKGROUND

### A.     The January 6, 2021 Attack on the Capitol

The government refers the court to the stipulated Statement of Offense filed in this case, ECF 32, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

---

is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

**B.     Lockwood's Role in the January 6, 2021 Attack on the Capitol**

On January 6, Lockwood attended the "Stop the Steal" rally and then walked to the U.S. Capitol building.  By 3:18 p.m., Lockwood was on the west side of the U.S. Capitol building on the northwest riser that formed part of the inaugural amphitheater.  PSR ¶ 21.  At 3:47 p.m., Lockwood sent a Facebook message to another user ("User 1"), stating, "Im [sic] on top of the capitol bro."  *Id.*   At 4:06 p.m., he sent another message to User 1, and included Images 1 and 2 below.



*Images 1 and 2; taken from Exhibit 4 at 3, 5.*

3

At approximately 4:23 p.m., police officers used gas on the northwest riser, near Lockwood. PSR ¶ 21. At 4:27 p.m., Lockwood sent another Facebook message to User 1, stating "They just tear gassed the F[***] out of us." *Id.* By 4:33 p.m., Lockwood was on top of a raised platform on the northwest riser where a crowd of rioters was standing, as shown in Image 3 below.



*Image 3; screenshot from Exhibit 1 at 20 seconds; Lockwood circled in red.*

At approximately 4:35 p.m., Metropolitan Police Department ("MPD") police officers, including MPD Officer M.M., began climbing on top of the raised platform where Lockwood and other rioters were standing. MPD officers began clearing the raised platform of the rioters. Police officers attempted to move Lockwood off the platform, and Lockwood resisted.



*Image 4; screenshot from Exh. 2 at 19 seconds; Lockwood circled in red.*

Lockwood continued to resist for the next two minutes. At approximately 4:38:41 p.m., the rioters' resistance escalated. In Image 5 below, Lockwood put his elbow into an officer. At approximately the same time, as illustrated in Image 6 below, another rioter ("Rioter 1") had fallen to the ground on the other side of Lockwood and began using a flagpole to strike MPD Officer M.M.

5



*Image 5; screenshot from Exh. 2 at 2:20; Lockwood circled in red.*



*Image 6; screenshot from Exhibit 3 at 42 seconds; MPD Officer M.M. body-worn camera; Lockwood circled in red.*

Officer M.M. attempted to subdue Rioter 1 with his police baton, but Lockwood grabbed the police baton and began wrestling with Officer M.M. for control of the baton.



*Image 7; screenshot from Exhibit 3 at 49 seconds; Lockwood circled in red; Lockwood grabbing baton circled in yellow; Lockwood's arm contacting Officer M.M. circled in blue.*



*Image 8; screenshot from Exhibit 1 at 5:58; Lockwood grabbing baton circled in yellow; Lockwood's arm contacting Officer M.M. circled in blue.*

After a brief struggle, Lockwood—still grabbing the police baton—jumped off of the raised platform and ripped the police baton from Officer M.M.'s hands.


*Image 9; screenshot from Exhibit 3 at 55 seconds; Lockwood circled in red; Lockwood grabbing baton circled in yellow.*


*Image 10; screenshot from Exhibit 1 at 6:01; Lockwood circled in red; Lockwood grabbing baton circled in yellow.*

8

Lockwood, police baton in hand, then disappeared into the mob.



*Image 11; screenshot from Exhibit 1 at 6:07; Lockwood circled in red; Lockwood holding baton circled in yellow.*

At 5:07 p.m., Lockwood sent another Facebook message to User 1, stating, "Yea bro I got in a fight with the cops and S[***]." At 5:11 p.m., User 1 asked, "and you didn't get arrested ???" At 5:45 p.m., Lockwood replied, "No arrest I took a baton from them."

On January 9, 2021, at 3:36 p.m., Lockwood sent a Facebook message to another user ("User 2"), stating, "Got me a little souvenir from Wednesday." The message included two images of a police baton:



*Images 12 and 13; from Exhibit 5 at 2–3.*

9

## III. THE CHARGES AND PLEA AGREEMENT

On May 3, 2023, a federal grand jury returned an indictment charging Lockwood with obstructing, impeding, or interfering with a law enforcement officer, in violation of 18 U.S.C. § 231(a)(3) (Count One); assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1) (Count Two); theft of property within special and maritime jurisdiction, in violation of 18 U.S.C. § 661 (Count Three); entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Four); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Five); engaging in physical violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4) (Count Six); and act of physical violence in the Capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Seven). On July 24, 2023, Lockwood was convicted on Count Two, based on a guilty plea entered pursuant to a plea agreement.

## IV. STATUTORY PENALTIES

Lockwood now faces sentencing on one count of violating of 18 U.S.C. § 111(a)(1). As noted by the plea agreement and the Presentence Investigation Report issued by the U.S. Probation ("PSR") Office, Lockwood faces up to 8 years of imprisonment, a term of supervised release of not more than three years, a fine up to $250,000, and a mandatory special assessment of $100.

## V. THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). The government agrees with the PSR's calculation of the applicable offense level, which

10

is also consistent with what the parties agreed to in the plea agreement. That Guidelines analysis is as follows:

<u>Count Two: 18 U.S.C. § 111(a)(1)</u>

| | | | |
|---|---|---|---|
| U.S.S.G. § 2A2.2(a) | Base Offense Level | | 14 |
| U.S.S.G. § 3A1.2(b) | Official Victim | | +6 |
| | | **Total** | **20** |
| Acceptance of responsibility (U.S.S.G. § 3E1.1) | | | -3 |
| **Total Adjusted Offense Level:** | | | **17** |

Pursuant to U.S.S.G. § 2A2.4(a), the Base Offense Level for a Section 111 offense is 10. But when the assault constituted "aggravated assault," the cross-reference in U.S.S.G. § 2A2.4(c)(1) states that the court should apply U.S.S.G. § 2A2.2. An aggravated assault includes a "felonious assault" that "involved … an intent to commit another felony." U.S.S.G. § 2A2.2, cmt. n.1. The Guidelines do not define "assault" or "felonious assault," and sentencing courts have looked to the common law to define "assault" for Guidelines purposes. *See United States v. Hampton*, 628 F.3d 654, 660 (4th Cir. 2010). Assault encompasses conduct intended to injure another or presenting a realistic threat of violence to another. *See United States v. Dat Quoc Do*, 994 F.3d 1096, 1099 (9th Cir. 2021) (federal common-law assault includes (1) "a willful attempt to inflict injury upon the person of another," or (2) "a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm."). By stealing Officer M.M.'s baton while he was under physical attack by Rioter 1, who was striking Officer M.M. with a flagpole, thereby rendering Officer M.M. defenseless, Lockwood willfully attempted to inflict injury on Officer M.M. by way of Rioter 1's assaults on the officer. Lockwood's assault on Officer M.M. also was committed with the intent

11

to violate 18 U.S.C. § 661, a theft that occurred within the "special maritime and territorial jurisdiction of the United States." A violation of § 661 is punishable by "not more than five years," and is therefore a felony, if, inter alia, "property is taken from the person of another." 18 U.S.C. § 661. Lockwood stole the baton from the person of Officer M.M., so the parties properly stipulated in the plea agreement that the cross-reference in U.S.S.G. § 2A2.4(c)(1) applied. *See* Plea Agreement, ECF 31 ¶ 5(A).

The U.S. Probation Office calculated Lockwood's criminal history as category I, which is not disputed. PSR ¶ 55. Accordingly, with a total adjusted offense level, after acceptance of responsibility, of 17, Lockwood's Guidelines imprisonment range is 24 to 30 months. Lockwood's plea agreement contains an agreed-upon Guidelines range calculation that mirrors the calculation contained herein.

## VI.     SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A.     Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Lockwood's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Lockwood physically wrestled with a police officer, stole his police baton, and then bragged to friends that the police baton was a "souvenir." The nature and circumstances of Lockwood's offense were of the utmost seriousness, and warrant the government's recommended sentence of 27 months' imprisonment.

B.   **Lockwood's History and Characteristics**

Lockwood's history is unremarkable. He grew up in Ohio with his mother and described his childhood as "pretty good" and "pleasant." PSR ¶¶ 68–69. Lockwood has a history of juvenile domestic violence, *id.* ¶¶ 47–49, and driving under the influence of alcohol, *id.* ¶¶ 51–53. Nothing about Lockwood's history mitigates his overwhelmingly willful conduct on January 6, 2021.

C.   **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Lockwood's criminal conduct on January 6 was the epitome of disrespect for the law.

D.   **The Need for the Sentence to Afford Adequate Deterrence**

*General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[2] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a substantial term of incarceration.

---

[2] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

Lockwood flaunted his illegal presence at the U.S. Capitol through selfies he captured and sent to friends. When the police used gas to disperse the crowd, Lockwood remained. When police officers climbed on top of the raised platform where Lockwood and other rioters were standing and told Lockwood to leave, Lockwood remained. When another rioter began striking Officer M.M. with a flagpole, rather than help Officer M.M., Lockwood instead stole Officer M.M.'s police baton as a trophy. He then bragged about it to a friend, claiming it was a souvenir. Lockwood displayed a flagrant disrespect for lawful authority over a prolonged period of time on January 6. The sentence imposed must be sufficient to provide specific deterrence from committing future violence.

### E.   The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F. Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord* United States v. Sanchez, 989 F.3d 523, 540 (7th Cir. 2021). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Hrg. Tr. at 49 ("as far as disparity goes, … I am being asked to give a sentence well within the guideline range, and I intend to give a sentence within the guideline range.") (statement of Judge Chutkan).

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every

15

sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[3]

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").[4]

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

---

[3] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

In *United States v. Dennis*, 21-cr-679 (JEB), the defendant was found guilty after a bench trial of two counts of violating 18 U.S.C. § 111(a) and other lesser offenses. Like Lockwood, Dennis was in the area near the inaugural stage on the west side of the Capitol and did not enter the building. Dennis approached the police line and grabbed one officer's police baton, was pushed backward, and then came back at the police line to strike a second officer. Like Lockwood, Dennis committed assault in resisting the police line on the Upper West Terrace. Judge Boasberg sentenced Dennis to 36 months' incarceration. While Dennis faced a higher guideline range than Lockwood (because Dennis did not receive the benefit of accepting responsibility) and was convicted of two assaults (rather than one), this case presents other aggravating factors that were absent in Dennis's case. Most significantly Lockwood, unlike Dennis, successfully stole a police baton from the officer he assaulted.

The Court may also consider, for reference, the sentence imposed in *United States v. Clayton*, 21-cr-139 (RCL). There, the defendant pled guilty to two counts of violating 18 U.S.C. § 111(a), resulting in a guidelines range of 30–37 months' incarceration. Like Lockwood, Clayton was in the area near the inaugural stage on the west side of the Capitol and did not enter the building. Clayton resisted officers' attempts to clear the Upper West Terrace by grabbing multiple officers' police shields and stole a police baton that an officer had lost during the struggle. Unlike Lockwood, Clayton did not rip the baton out of an officer's hand and brag about keeping it as a souvenir. Judge Lamberth sentenced Clayton to a guidelines sentence of 30 months' incarceration. A sentence of 27 months' incarceration is warranted on the comparable facts presented here.

In *United States v. Phipps*, 21-cr-44 (CJN), the defendant pled guilty to charges that included one count of violating 18 U.S.C. § 111(a) and other lesser offenses, resulting in a guidelines range of 27 to 33 months' incarceration. Like Lockwood, Phipps assaulted police officers by pushing against them as they attempted to clear the west side of the U.S. Capitol building's exterior. Like Lockwood, during one struggle with a police officer, Phipps grabbed an officer's police baton. But unlike Lockwood, Phipps did not steal the baton.[5] Judge Nichols sentenced Phipps to a guidelines sentence of 27 months' incarceration. A sentence of 27 months' incarceration is appropriate in this case.

## VII.   RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[6] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering

---

[5] Phipps also spent approximately 30 minutes trespassing inside the U.S. Capitol building, unlike Lockwood.

[6] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

18

from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The victim in this case, Officer M.M., did not suffer bodily injury as a result of Lockwood's assault. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Lockwood must pay $2,000 in restitution, which reflects in part the role Lockwood played in the riot on January 6.[7] Plea Agmt. ¶ 12. As the plea agreement reflects, the riot at the United States Capitol caused "approximately $2,881,360.20" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of October 2022. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Lockwood's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 115.

---

[7] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

19

## VIII. CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of 27 months' incarceration, three years' supervised release, $2,000 restitution, and a $100 special assessment.

<div style="margin-left: 50%">

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By: */s/ Michael L. Jones*
MICHAEL L. JONES
DC Bar No. 1047027
Trial Attorney
Capitol Riot Detailee
601 D St. NW
Washington, DC 20530
(202) 252-7820
michael.jones@usdoj.gov

</div>