UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,         : | |
|                                                                : | |
| v.                                                           : | Case No. 1:23-cr-146-RDM |
|                                                                : | |
| MICHAEL SCOTT LOCKWOOD   : | |
|          *Defendant*.                               : | |
|                                                                : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING
AND ASSESSMENT OF 18 U.S.C. § 3553(a) SENTENCING FACTORS AND
MOTION FOR VARIANCE**

COMES NOW, Michael Lockwood, by and through counsel, and provides the Court with his position regarding the application of the sentencing factors to the Court's obligation to impose a sentence "sufficient, but not greater than necessary to comply" with the factors found in 18 U.S.C. § 3553(a).  Mr. Lockwood respectfully requests a downward variance from the sentencing guidelines and a sentence not to exceed home detention or 6 months incarceration.

**Background**

Mr. Lockwood is aware of the seriousness of the events of January 6, 2021, and that of the larger collective who gathered in protest that day.  It was a protest that ultimately turned violent and destructive; destructive to individual victims, and destructive to the broader democratic process of which Mr. Lockwood was there to peacefully participate.

Mr. Lockwood pled guilty on July 24, 2023, to Count 2 of the indictment: Assaulting, Resisting, or Impeding Certain Officers under 18 U.S.C. §§ 111(a)(1), and he now stands before the court for sentencing.  Mr. Lockwood takes full responsibility for his actions, as demonstrated by his plea and the statement that he will make to the Court during sentencing.

Mr. Lockwood is a thirty-three-year-old, resident of Ohio.  He is employed full-time and building his life as a contributing member of his community.  He is renovating his home,

preparing for his new life with his fiancé.  He has loving family members and friends, who stand beside him and speak to his character.  *See* Exhibit 1, letters from family and friends.  He is neither a life-long criminal, nor a long-term partisan zealot, as many seek to portray him; rather, he is just a man trying to earn a living, start his family, and help those around him.

Mr. Lockwood traveled to Washington for President Trump's speech on January 6.  While traveling to the event was something of an afterthought for Mr. Lockwood, he was excited, as it would offer him an opportunity to meaningfully exercise his First Amendment rights in peaceful support of political matters that were important to him.  He did not bring a weapon or other instrumentality of battle, he did not coordinate with any groups, and he did not encourage others to violate the law.

The charged conduct revolves around a few short minutes of Mr. Lockwood's life, as law enforcement asked those around Mr. Lockwood to leave the elevated platform on which the crowd was standing near the Capitol.  A moment later Mr. Lockwood saw an older protestor on the ground, who law enforcement was hitting repeatedly with a baton.  Mr. Lockwood instinctively stepped in to stop.  He reached out and grabbed the baton that law enforcement was using to bludgeon the other protestor.  He did not act with malice or intent to harm the law enforcement officer.

Law enforcement officers then turned their attention to Mr. Lockwood, as they repeatedly hit Mr. Lockwood in the head before pushing him off the raised platform.  Mr. Lockwood held on to the baton as he was thrown off the platform.  Indicative of his intent, Mr. Lockwood did not then use the baton to attack or hurt law enforcement or any other member of the crowd.  Instead, he disengaged and walked away from the conflict with baton in hand.

Mr. Lockwood lives with regret that he was there that day, let alone in on the raised platform where he encountered law enforcement. While reviewing discovery and reviewing public coverage, he is well aware of the physical and emotional trauma this day inflicted on members of law enforcement—and helpless members of the protest—and he expresses nothing by regret and sympathy.

As demonstrated by Mr. Lockwood's life history, the attached letters from family and friends, and his actions since arrest, Mr. Lockwood's character will ensure that he fulfills the obligations that the Court and Probation imposes on him. This commitment should be both encouraged and fostered through a sentence that appropriately balances punishment, deterrence, and rehabilitation.

## Sentencing Guidelines

The Court begins "all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). The Presentence Report ("PSR") correctly calculates Mr. Lockwood's sentencing guidelines: the base-level offense for this violation of 18 U.S.C. § 111(a)(1) is 14 (United States Sentencing Commission, Guidelines Manual ("USSG") § 2A2.2(a)); six levels are added because of an "Official Victim" (USSG § 3A1.2(b)); and a combined total of three points are reduced based on an "Acceptance of Responsibility."

This equates to a Total Offense Level of 17. Mr. Lockwood has a total criminal history score of zero, which establishes a criminal history category of I. The guidelines imprisonment range is 24 months to 30 months of incarceration.

**Argument**

A. **The Court shall impose a sentence sufficient, but not greater than necessary, to comply with 18 U.S.C. § 3553(a).**

"The court shall impose a sentence sufficient, but not greater than necessary, to comply with" 18 U.S.C. § 3553(a)'s mandates. These include considering the "nature and circumstances of the offense and the history and characteristics of the defendant," reflecting the seriousness of the offense, affording adequate deterrence, protecting the public, and providing necessary rehabilitation to the defendant. 18 U.S.C. § 3553(a)(1-2).

In *United States v. Booker*, 125 S.Ct. 738 (2005), the Supreme Court restored to sentencing judges the power to use discretion in determining appropriate sentences. "In the wake of *Booker*, therefore, the discretion of a sentencing court is no longer bound by the range prescribed by the sentencing guidelines. Nevertheless, a sentencing court is still required to 'consult [the] guidelines and take them into account when sentencing.'" *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (quoting *Booker*, 125 S.Ct. at 767). In light of *Booker*, "a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *Id.* (citation omitted).

B. **18 U.S.C. § 3553(a) Factors to Consider in Sentencing.**

    1. **Nature and Circumstances of the Offense.**

The charged conduct, along with the events of January 6, 2021, in general, had serious consequences, as reflected in the PSR and as generally known by the historical significance of that day. The sheer volume of cases brought by the Government speaks to the importance of

4

January 6 to the country, both as a matter of criminal conduct and as it intersects with the peaceful handover of power and the Constitutional structures that serve the country.

From Defendant's standpoint leading up to January 6, 2021, it was a date that would provide an opportunity to hear from President Trump and lend his voice and presence in support of issues that he believed were important. Regardless of how the Government chooses to portray Mr. Lockwood, he arrived on January 6 to exercise his First Amendment right to voice concerns he had about the integrity of the election and the protection of Constitutional safeguards. Meaning, he did not arrive in Washington with weapons or plans of destruction or chaos—as some groups did. He arrived to speak out and bring attention to issues that he did not believe were receiving enough attention. This, in itself, should be encouraged and cheered, rather than derided and jeered.

Mr. Lockwood's actions went beyond his peaceful intent, however, when he did not immediately remove himself from the raised platform on which he was standing when law enforcement asked him to leave. His act of civil disobedience was wrong, and it allowed for an escalation.

A moment later Mr. Lockwood saw an older protestor on the ground, who law enforcement was hitting repeatedly with a baton. Mr. Lockwood instinctively stepped in to stop. He reached out and grabbed the baton that law enforcement was using to bludgeon the other protestor. He did not act with malice or intent to harm the law enforcement officer.

Law enforcement officers then turned their attention to Mr. Lockwood, as they repeatedly hit Mr. Lockwood in the head before pushing him off the raised platform. Mr. Lockwood held on to the baton as he was thrown off the platform. Indicative of his intent, Mr. Lockwood did not then use the baton to attack or hurt law enforcement or any other member of the crowd.

Instead, he disengaged and walked away from the conflict with baton in hand. He did not return to re-engage.

These brief moments—from law enforcement approaching the platform to the time he was thrown off—are the extent of his crime.

>    2.    **<u>History and Characteristics of the Defendant.</u>**

These actions must be viewed in light of Mr. Lockwood's history and characteristics. Mr. Lockwood is 33 years old. He has unrelated criminal history, largely related to childhood discipline issues related alcohol, drugs, and disputes among his family. *See* PSR ¶ 46-63. He grew through challenges, maturing, and developing healthier relationships with his family. He has worked hard to get to a healthy and productive place in his life.

He is neither a political zealot nor an anti-government figure, in contrast with some of the more radical actors on January 6. His history and characteristics are largely devoid of any strong political leanings. While he understands that he will be punished for his actions that day, his history and characteristics do not reflect an intense political persuasion that creates a larger risk or need for greater punishment or deterrence going forward.

Instead, he is fairly typical individual living across the country. He is renovating his home in Ohio, so that he and his fiancé can start their married journey together in a freshly renovated house. He works hard daily as an appliance technician, as he grows his technical skills and pays his bills. Like most people, he makes ends meet, but he has financial stresses. The PSR accurately reflects his tight monthly cash-flow, which leaves less than $500 per month in the black under the best of circumstances. *See* PSR ¶ 19. The recent student loan moratorium period is about to end, which will lead to a net negative cash flow every month in the very near term, as student loan obligations return to his monthly balance sheet.

More acutely, since he was last in front of the Court for his plea, Mr. Lockwood had to have emergency surgery to have his appendix removed. While he is recovering from the physical pain, he is now left with nearly $20,000.00 on his medical bill from this emergency treatment and surgery. *See* Exhibit 2. This has led to unexpected financial stress, layered on top of his legal fees and the restitution that will be due as part of this case. His continued ability to work and provide for himself and his family is essential to his livelihood and his continued viability as a contributing member of his community.

More than these biographical data points, his family and friends speak lovingly of the family member and friend whom they support. *See* Exhibit 1. These individuals are not anti-government or anti-law enforcement; instead, they write of their understanding that Mr. Lockwood was wrong, that he is facing serious consequences for his actions, and that he will need their help as he moves beyond this chapter in his life. These are family and friends who will engender the system's goal of rehabilitation and deterrence, by supporting him to get back on his feet while holding him accountable to prevent future lawless acts.

His father succinctly captures this sentiment:

> Michael made a decision to attend the rally at the Capitol Building on that day because I believe he really thought he was doing something he felt was right. In hindsight it turned out to be a bad decision. My son is not a political agitator, nor is he a violent person. He was raised with a sense of honor and commitment, and he felt he was exercising his rights as a citizen of the United States. Michael comes from a military and police force family, as myself, my brother and father, and his cousins have all fought for our great country in times past, from the Vietnam War up to the present. Michael understands that our system of law and justice is vital to us maintaining the freedoms we all need and desire.
>
> I understand he is in trouble here. When I witnessed the events going on that fateful day, I too was filled with sadness for our nation. I believe that Michael understands his wrongdoing, and given the opportunity would have made a better decision regarding his role in the events of that day….

7

> I believe that Michael knows the mistake he made and that he regrets that mistake every day of his life. He is a vital member of our small town, and a good employee. I pray that you would see it in your heart to offer Michael a second chance to regain his life here with us.

His mother echoes those words of support:

> Michael is truly an honest, reliable, and trustworthy man. Michael is compassionate and empathetic. He has a genuine concern for the well-being of others and is ready and willing to offer his assistance when someone is in need. Michael conducts himself in a respectful manner, treating others with fairness and courtesy. He is deeply committed to his family and friends.
>
> It is with a heavy heart that I acknowledge the charges that Michael is facing, I firmly believe that this behavior is completely out of character for him. This incident does not define his true character.
>
> Moreover, Michael has expressed genuine remorse for his actions. Michael has a strong sense of personal responsibility and accountability[.]

*See* Exhibit 1.

His fiancé writes of her love and support for him:

> have known and been together with Mike for eight wonderful years. During this time, he has shown me the utmost respect, kindness, generosity, loyalty and love for not only myself but my family and friends as well as his own. Mike is an extremely dedicated, selfless and hardworking individual. Dedicated to building a future for us, his career, helping his family and friends and dedicated to God. If I am honest with myself, he may be the hardest working person that I have ever known in my entire life, and I unfortunately do not always let him know it. His willingness

She continues in her letter, writing about her commitment to helping Mr. Lockwood through the rehabilitation process:

> With that said Mike is fully aware of the situation that he put himself in and is ready to accept responsibility and the repercussions of his ignorant actions. If Mike is confined to prison I will stand by his side until his return, he is the love of my life and I am willing wait as long as it takes to be with him. He does have a career job that will be waiting for his return along with his

"He is in my heart through this challenging time," writes his stepfather. And they all reflect that they will be there to support Mr. Lockwood. "My wife and I will be there to support him, no matter what," writes his uncle. His uncle continues:

> In between working a full time job, Micheal and his fiancé had purchased a farmhouse that is 100 years old. Together, these two have been working hard to renovate this home over a year. This house has gone from a dilapidated structure to a beautiful family home. In my eyes this is a true testament to the dedicated, hard working, and goal oriented type of person I know that Micheal is.

His aunt promises her support: "Just as Micael was here for me, I will always be there to support him in any way possible." And she further describes his character:

> I was surprised to hear about the charges that he is facing, but I am not surprised that he has taken full responsibility for his actions. This was out go character for him and I am completely confident that he would never let anything like this happen again.

Mr. Lockwood needs his family, and his family needs him. This accountability and support serve the needs of justice by protecting the community while fostering Mr. Lockwood's successful rehabilitation.

**3. The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.**

The nature and circumstances of the offense and of Mr. Lockwood must be balanced with imposing a sentence that reflects the seriousness of this offense, respects the rule of law, and provides a just punishment. Mr. Lockwood understands the seriousness of this charged conduct and, indeed, the entirety of what occurred on January 6, 2021. Innocent members of law enforcement were needlessly injured, multiple protestors died of various causes, and others were injured and scarred.

The Government contends that Mr. Lockwood has "failed to express any remorse for his actions," but that is belied by the facts. *See* Government Memo in Aid of Sentencing, at 2 [ECF

9

36]. Mr. Lockwood takes full responsibility for his actions and his role. That was borne out in the early and good faith negotiations entered into with the Government, his plea of Guilty, Mr. Lockwood's conversation with family and friends—as evidenced in their letters—and the expression of remorse that he will make in open Court. While the Government can fairly point to a few of his text exchanges following his encounter with law enforcement, those messages were not public, and, much more importantly, they came to an end upon realizing the gravity and damage caused by the protest. This is the essence of remorse and acceptance of guilt: to commit an offense, reflect on it, realize it was wrong, accept responsibility, and then ensure it is not repeated.

As serious as Mr. Lockwood's actions were, they must be viewed in context when considering sentencing. Unlike others, Mr. Lockwood did not bring any weapons with him to the speech. Nor did he bring any items that suggested he anticipated what ended up occurring. He did not bring body armor or a helmet. He did not bring a radio or a gas mask. In fact, he did not even bring any political apparel.

While his lack of preparation or anticipation does not change what happened that day, it is important context. His specific conduct, for which he is remorseful, did contribute to the overall chaos. But his actions contributed decidedly less than the actions of those who brought tear gas and weapons, than the actions of those who came with designs of destruction, and than those who repeatedly and unrepentantly assaulted, destroyed, and trespassed. This does not excuse Mr. Lockwood, but it is relevant context when evaluating the severity of his specific conduct.

### 4. To Afford Adequate Deterrence to Criminal Conduct.

Mr. Lockwood has been adequately deterred and is not likely to engage in future criminal conduct.  Just as he learned from his struggles as a juvenile, he has learned from this event, and he has been deterred significantly.  This was the first and only political speech or protest that he ever attended, and it will be his last.  He suffers from the knowledge that he has endangered not only his own future, but that of his new family.  In addition to whatever sentence the Court hands down, he has damaged his criminal record, his income, his reputation, and his ability to live peacefully at liberty with this family.  The knowledge that he has worked so hard and now stands to lose it due to his reckless actions during a few brief moments on January 6 deters him every day.

In addition to specific deterrence, Mr. Lockwood understands that the Court must also address general deterrence in its sentence.  A sentence that includes a felony conviction related to the events of January 6, $2,000 in restitution, significant home confinement, meaningful community service, and any other terms recommended by probation provides adequate general deterrence.

This will follow Mr. Lockwood for the rest of his life, and it serves as a daily tattoo of unavoidable consequence.  He is deterred.

### 5. To Protect the Public from Further Crimes of the Defendant.

Mr. Lockwood is not a danger to the community.  Further, Mr. Lockwood's conduct on January 6 is isolated to a unique set of circumstances that unfolded that are not likely to be replicated.  The individuals who participated in the Capitol riot were "called to Washington, DC, by an elected official, [and] prompted to walk to the Capitol by an elected official." *United States v. John Lolos*, 1:21-cr-00243-APM (sentencing held on November 19, 2021).  People such

as Mr. Lockwood were "a pawn in the game played by people who know better." *Id.* Without provocation from former leaders and a mob of thousands of people, Mr. Lockwood would not have conducted himself the way that he did. He was used by others. While he bears the responsibility for his actions, he should not bear the responsibility for others as well.

Even if the events of that day were to repeat themselves in some fashion, Mr. Lockwood would not be a part. He has been convicted and punished—even before the Court's sentencing—and he has lost so much of what he cares for in life. He is deterred and society is protected from Mr. Lockwood, for the reasons argued above and presented by his family and friends.

### 6. **Unwarranted Sentencing Disparities.**

18 U.S.C. § 3553(a)(6) directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Due to the large number of January 6 cases, there are many cases available for comparison, all subject to unique facts and criminal histories. Nonetheless, comparison and consideration of these cases is helpful.

The Government is requesting 27 months, so included in this chart below are cases only up to 27 months of adjudged confinement. This is illustrative to see where Mr. Lockwood's conduct compares with Mr. Matthew, who received home detention, which the Defense seeks here, all the way up to Mr. Creek's 27 months', which is what the Government seeks.

| Name | Charge | Facts | Sentence |
|---|---|---|---|
| USA v. Mathew Council, 1:21-cr-207-TNM | 231(a)(3), 111(a)(1), 1752(a)(1) and (2) | Defendant entered the senate wing doors with the initial breach. He was with a larger group of rioters. He continued to push into the building, shouting at officers who were trying to contain him. Once inside, he | 6 months home detention |

| | | continued undeterred and pushed an officer he encountered. He had to be pepper sprayed by several officers before he was detained. | |
|---|---|---|---|
| USA v. Philip Young, 1:21-cr-617-DLF | 111(a)(1), 231(a)(3) | Defendant assaulted a line of law enforcement with a metal barricade | 8 months, Government requested 40 months |
| USA v. Troy Sargent, 1:21-cr-258-TFH | 111(a), 231(a)(3), 1752(a)(1) and (2) | Defendant swung open hand at an officer and made contact. He then swung again at the same officer but made contact with someone else. He later boasted about it on social media that he "got two hits on a rookie cop." | 14 months |
| USA v. Michael Dickinson, 1:21-cr-649-JDB | 111(a)(1) | Defendant walked up to a line of officers guarding the north side. He threw coffee tumbler at an officer. It struck the officer in the face and chest and bounced off to hit another officer. He then picked up a bucket of unknown liquid and dumped it on other officers. | 20 months |
| USA v. Michael Eckerman, 1:21-cr-513-RBW | 111(a)(1) | Eckerman recruited friends and family members for weeks leading up to the rally. He encouraged and filmed another rioter assaulting a police officer, calling him a "traitor." He walked into the Capitol through the broken senate wing window. He was crucial in breaching a line inside when he pushed an officer causing him to fall down. After the officer fell, another rioter sprayed him in the face with a fire extinguisher. His actions allowed the mob to penetrate the second floor of the Capitol. He | 20 months |

| | | | |
|---|---|---|---|
| | | took celebratory photos, bragged about his behavior, and assaulting law enforcement. He continued to message with friends and family members about a "civil war" and boasting about his behavior. | |
| USA v. Joshua Hernandez, 1:22-cr-042-CRC | 111(a)(1), 231(a)(3) | He incited the crowd before entering the Senate Wing Doors through a broken window. He joined rioters and shouted at them to push officers so they can open the door to other rioters. He used a flagpole and hit an officer in the head with the metal portion. He entered the Capitol. | 24 months |
| USA v. Kevin Creek, 1:21-cr-645-DLF | 111(a)(1) | Mr. Creek played a pivotal role in breaking the police's defensive lines on the West Terrace. Mr. Creek assaulted a Sergeant who was overseeing a thin line of police. His attack according to AUSA Fifield was a pivotal moment in the defense of the Capitol. When asked if he was remorseful prior to his arrest, he replied "50/50." | 27 months |

While these cases may be distinguished on one basis or another—specific facts unique to the individual or aggravating facts related to the crime—that is the point. Each case must receive an individualized sentence taking into account the mandates of 18 U.S.C. § 3553(a) and the need to not created unwarranted sentence disparities. Rather than advancing its argument regarding sentencing disparity, the cases cited by the Government underscore that a term of 27 months would create unwarranted sentencing disparities. *See* Government Sentencing Memorandum at 17-18 [ECF 36.]

The first two cases cited by the Government involve multiple assaults. *See* Government Sentencing Memorandum at 17 [ECF 36.] In *United States v. Dennis*, 21-cr-679-JEB, the defendant approached the police line, stole a baton, and reapproached the police line to strike a second officer. In addition to committing multiple assaults, he did not take responsibility, before being sentenced to 36 months. And in *United States v. Clayton*, 21-cr-139-RCL, the defendant committed multiple assaults, including grabbing and ripping at the face mask of a beleaguered law enforcement officer. His sentence of 30 months is not comparable based on these facts.

And finally, the Government cites to *United States Phipps*, 21-cr-44-JCN. While it is correct that Mr. Phipps pled to a count of 18 U.S.C. § 111(a), he also pled guilty to five other counts, including entering and remaining in the Capitol and attempting to impede Congress, among other felonies. Judge Nichols sentenced this defendant to 27 months. This case is likewise not comparable, except to demonstrate that 27 months is inappropriate.

Taking into account the facts of this case in comparison with other January 6 cases, any sentence beyond home detention or 6 months incarceration would create an unwarranted sentence disparity.

**C.     Downward Variance.**

A variance is appropriate due to the extraordinary circumstances of January 6, in which a sitting president beckoned supporters to travel to the capital in his support. Mr. Lockwood, a productive and hard working 33-year-old man, then traveled to Washington, D.C., to exercise his lawfully protected First Amendment rights in a protest, which ultimately spiraled out of control. Even in that chaotic environment, Mr. Lockwood did not seek out violence against law enforcement. He thought that he was protecting a protestor who was getting hit on the ground.

The uniqueness of this event and Mr. Lockwood's minimal role is further captured in Probation's Sentencing Recommendation of a below-guidelines, downward variance. [ECF 38.] It also represents an objective understanding that although Mr. Lockwood was entirely wrong to assault or impede law enforcement, the circumstances leading to this § 111(a) conviction stand starkly inapposite from other § 111(a) offenses for which the Sentencing Guidelines were designed. It is a unique set of circumstances that brings someone to this place in the criminal justice process at this point in their life.

To this point, the Government's argument throughout the prosecution of the January 6 cases is that they stand apart, unique in their nature. The Government has repeated this argument frequently, related to discovery, speedy trial, joinder, and other important Constitutional issues. For that uniqueness to be consistent, a rote allegiance to the sentencing guidelines—which neither considered nor planned for these facts—would be illogical. These cases are either unique—as the Government has repeatedly represented to the Court—or they are not. Defendant suggests that they are indeed unique, making the sentencing guidelines less informative than they would be otherwise.

The mandates of 18 U.S.C. § 3553(a), the unique facts and circumstances of this case, and the need to avoid unwarranted sentence disparity all militate in favor of a reasonable downward variance from the sentencing guidelines, which cannot properly capture these facts and circumstances through a formula. For these reasons, Mr. Lockwood requests a period of home detention that will restrain his liberty as punishment, while allowing him to remain gainfully employed as rehabilitation.

## Conclusion

For these reasons, Mr. Lockwood respectfully requests a downward variance from the sentencing guidelines and a sentence not to exceed home detention or 6 months incarceration.

                                           Respectfully submitted,

                                           Michael Lockwood
                                           By Counsel

\_\_\_/s/_____
Samuel C. Moore
D.C. Bar No. 1015060
Moore, Christoff & Siddiqui, PLLC
526 King St., Suite 506
Alexandria, VA 22314
Email: scmoore@moorechristoff.com
Phone: 703-535-7809
Fax: 571-223-5234
*Counsel for the Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of October, 2023, I electronically filed the foregoing with the Clerk of Court Using the CM/ECF system, which will then send a notification of such filing (NEF) to:

    Michael L. Jones
    Trial Attorney
    Capitol Riot Detailee
    601 D Street NW
    Washington, D.C. 20530
    (202) 252-7820
    michael.jones@usdoj.gov

                                           \_\_\_/s/_____
                                           Samuel C. Moore
                                           D.C. Bar No. 1015060
                                           Moore, Christoff & Siddiqui, PLLC

526 King St., Suite 506  
Alexandria, VA 22314  
Email: scmoore@moorechristoff.com  
Phone: 703-535-7809  
Fax: 571-223-5234  
*Counsel for the Defendant*
